UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY NORTHINGTON,

       Plaintiff,                                  Hon. Janet T. Neff

v.                                                     Case No. 1:10 CV 424

JIM ARMSTRONG, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Ball and Filion's Motion for Summary Judgment</u>. (Dkt. #106). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

Plaintiff initiated this action on April 30, 2010, against 42 individuals, the Michigan Department of Corrections (MDOC), Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties." In his sixty-four (64) page certified Second Amended Complaint, Plaintiff asserts numerous claims involving various allegations occurring over a three year period. The following *factual*[1] allegations are contained in Plaintiff's Second Amended Complaint. To avoid confusion, Plaintiff's allegations are outlined in the same manner as in his Second Amended Complaint.

---

[1] In describing Plaintiff's various allegations, the Court has disregarded the numerous legal conclusions articulated by Plaintiff in his Amended Complaint, as well as the great many generalized factual allegations directed at no particular individual or entity.

### A. Allegation I

In May and June 2007, Plaintiff filed grievances against Defendant Berghuis regarding an alleged "laundry scheme," pursuant to which inmates were improperly charged for lost laundry. Plaintiff was warned by a prison employee "of the retaliation to come." On June 6, 2007, Defendants Berghuis and Shackleton transferred Plaintiff from the Brooks Correctional Facility to the Straits Correctional Facility. During this transfer, unidentified "MDOC officers. . .deliberately destroyed" two of Plaintiff's personal footlockers. This retaliatory conduct was "ordered by" Defendant Berghuis.

From July 1, 2007, through July 13, 2007, Defendant Campbell "said he would 'get Northington' and mentioned Plaintiff filing grievances." On July 13, 2007, at 1200 hours, Defendant Lawnichak authorized Plaintiff to attend chow. Defendant Campbell, however, alleging that Plaintiff arrived at the dining facility before 1200 hours, charged Plaintiff with a major misconduct violation for being "out of place." A prison employee later told Plaintiff that he had been charged with this violation as retaliation for asserting "complaints of embezzlement" against Defendant Berghuis. Plaintiff was later informed by another prison employee that "the misconduct [charge] was retaliation ordered from 'higher-up.'" On September 4, 2007, Defendants MDOC and Sherry ordered Plaintiff's transfer from the Straits Correctional Facility to the Kinross Correctional Facility. This transfer was ordered as "retaliation for Plaintiff asserting rights at misconduct hearing and through grievances."

On three occasions between May 31, 2007, and November 2, 2007, Defendant Menard and/or Defendant Overton charged Plaintiff's prisoner account five dollars for Health Service appointments Plaintiff did not request. This action was undertaken in retaliation for "Plaintiff seeking medical care. . .and defending his lawful rights." Defendants Armstrong, Berghuis, Brown, LaLonde, Woods, and MDOC were informed of this conduct, but refused to act for retaliatory purposes.

Defendants Armstrong, Berghuis, Brown, LaLonde, Menard, Overton, and Woods acted pursuant to an unwritten policy "to charge prisoners for Health Service callouts which were not chargeable under written policy and rules, often multiple times, as behavior modification tactic intended to deprive prisoners of medical care for life-threatening illness and disease, that depleted MDOC'[s] budget, based on budget constraints rather than medical need."

      B.      Allegation II

Plaintiff suffers from airway necrosis, permanent injury to internal organs, scarred lungs, and severe respiratory disease. Plaintiff also experiences "ever-increasing reaction with continued exposure to allergens common to certain locations of all MDOC prisons, and has an unresolved antibiotic resistant infection." As a result, three or more times daily, Plaintiff's "respiratory airways swell shut and fill with fluids so he cannot breath[e] from 15-seconds to 2-minutes each time." It takes "hours" for Plaintiff to recover from this incidents. Plaintiff also experiences difficulty sleeping. In February and March 2010, Defendant Kilaru denied Plaintiff care and subsequently determined that Plaintiff's various physical ailments were caused by "mental illness."

      C.      Allegation III

On April 8, 2008, Plaintiff, who was experiencing a fever and pneumonia, submitted a health care request to which he received no response. On three occasions between April 18, 2008, and June 5, 2008, Plaintiff "sent letters requesting medical care" and, furthermore, inquiring as to why he had still not received care in response to his April 8, 2008 request. On June 10, 2008, Plaintiff met with Defendant Henson. During this meeting, Plaintiff exhibited "raspy breathing and coughed-up fluids."

Plaintiff also reported that "he had not slept 4 of the last 5 nights because his lungs and respiratory airways swelled shut and filled with fluids." Defendant Henson concluded that "nothing was wrong" with Plaintiff and "refused to refer [him] for further care."

On June 20, 2008, Plaintiff was examined by Defendant Wilson who concluded that Plaintiff was suffering coniosis and scarred lungs caused by "lack of care." Defendant Wilson prescribed for Plaintiff a seven-day course of antibiotics. On June 29, 2008, Plaintiff requested "follow-up care" because his respiratory symptoms had returned. On July 2, 2008, Plaintiff was examined by Defendant Henson who falsely concluded that Plaintiff did not require medical care.

On three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendants CMS, Armstrong, Ball, Berlinger, Cunningham, Filion, Jenkins, malloy, Martin, MDOC, Stephenson, Sibbald, and Woods that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping. These Defendants "refused to see [that] Plaintiff got proper medical care."

On November 19, 2008, February 12, 2009, and March 12, 2009, Dr. Nagarja and Defendant Piazza prescribed for Plaintiff antibiotics which eliminated his symptoms. Five days after these prescriptions expired, however, Plaintiff's symptoms returned. In March 2009, Defendant Piazza informed Plaintiff that "past lack of care" was the cause of his airway necrosis.

While Plaintiff was taking his prescribed antibiotics, he experienced a "severe allergic reaction" to laundry detergent, disinfectant, cocoa butter lotion, soap, and bath powder. On three occasions between March 2009 and June 2009, Defendant Piazza "said he should issue but refused to issue [a] special accommodation to prevent Plaintiff being exposed to such allergens." Defendants Cunningham and Woods "refused to let Defendant Piazza issue [a] special accommodation" to Plaintiff. On or about June 15, 2009, Defendants Mackie, Martin, Woods, and MDOC "prohibited Defendant

Piazza [from] issuing [a] special accommodation for Plaintiff to be in a single-man cell." Defendants Berlinger and Sibbald subsequently "obstructed administrative relief."

In April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments contrary to orders of Dr. Piazza made in February, March and June 2009." This action was taken in retaliation "for Plaintiff's past grievances and letters of complaint." Defendants Ball, Filion, Henson, Jenkins, Martin, and Stephenson "refused to correct this." Defendants Cunningham, Ball, Jenkins, Stephenson, and Martin (on an unspecified date or dates) "ignored Dr. Piazza by refusing to timely refill his order for Flagyl antibiotics."

On December 5, 2009, at 6:40 p.m., Plaintiff went to Health Services "because of constant gagging." When he arrived at Health Services, Defendant Filion told Plaintiff, "you're just going to have to put up with it." At 10:00 p.m., Plaintiff returned to Health Services. Plaintiff's throat was swollen and he "coughed-up fluids. . .every 20-seconds." Defendant Manzardo told Plaintiff to "live with it" and gave him seven honey packets with instructions to "use in hot tea." At 10:30 p.m., Plaintiff drank hot tea into which he had poured one of the honey packets. Plaintiff immediately vomited and "had a more swollen throat." Plaintiff then contacted Health Services by telephone and was told by Defendant Manzardo to "live with it."

On December 22, 2009, Defendant Millette told Plaintiff that he: (1) would not attempt to uncover the cause of Plaintiff's respiratory illness; (2) would not issue a special accommodation to prevent Plaintiff being exposed to life-threatening allergens; and (3) would not order tests to determine the allergens in question. Plaintiff informed Defendant Russell of these various denials of medical treatment, but Russell "refused to correct them."

On December 23, 2009, Defendants Cunningham, Mackie, Olson, and/or Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for his grievances and letters of complaint seeking proper care and remedy for his illness."

In February and March 2010, Plaintiff was examined by Defendant Kilaru who informed Plaintiff that his "lungs were scarred and he had coniosis from MDOC's prior lack of care." Defendant Kilaru "refused to do anything" to determine the cause of or treat Plaintiff's symptoms or illness. Plaintiff informed Defendant Kilaru that his "throat swells shut and fills with fluids" when exposed to: (1) aroma; (2) dust; (3) fumes or vapors from cocoa butter lotions and soaps; (4) bath powder; (5) laundry detergent; (6) disinfectant; and (7) certain soaps. Plaintiff asked Defendant Kilaru to perform testing to determine the cause of his various allergic reactions that cause his throat to "swell shut and fill with fluids." Defendant Kilaru responded that "he would not order test(s) to determine allergens, nor determine cause of or treat allergies." Defendant Kilaru also refused Plaintiff's request for a special accommodation to prevent his exposure to these allergens.

Every month from December 2009 through June 2010, Defendants Caruso, Martin, Perea, Russell, MDOC, and PHS were informed of the aforementioned conduct of Defendants Cunningham, Filion, Kilaru, Manzardo, Millette, Piazza, but "refused to end the denial(s) of medical care to Plaintiff."

D. Allegation IV

On November 14, 2008, Plaintiff was involuntarily moved into a "common cell" with two other inmates, Defendants Barclay and Portes. Plaintiff was moved in retaliation for "filing grievances and complaints." From November 14, 2008, through, December 23, 2009, Defendants Barclay and Portes knowingly and deliberately "exposed Plaintiff to allergens" causing Plaintiff's

condition to worsen. Defendants Barclay and Portes also "would stay awake and create loud noises" at night to prevent Plaintiff from sleeping. Defendants Armstrong, Caruso, Harrington, Harwood, Isard, LaLonde, Mackie, Olson, Sibbald, and Woods were informed of the "unnecessary night-time noises and disturbances being caused by Defendants Barclay and Portes," but "took no action." The conduct by Defendants Barclay and Portes was "orchestrated" by unknown officials of the Michigan State Police. On several occasions, Plaintiff requested to be moved to another cell, but his requests were denied by Defendants Harrington, Harwood, Isard, LaLonde, Mackie, Olson, and Woods.

E.  Allegation V

Between April 21, 2008, and September 16, 2008, Defendant Berlinger denied several grievances Plaintiff filed. On September 17, 2008, Defendants Berlinger and Woods placed Plaintiff on modified grievance access in retaliation for "Plaintiff's past grievances." On October 21, 2008, Defendant Berlinger denied Plaintiff's request to file a grievance. On October 22, 2008, Defendant Isard, at Defendant Berlinger's request, falsely charged Plaintiff with a major misconduct violation. Between October 24, 2008, and December 23, 2009, Defendant Berlinger denied numerous grievances and/or requests for grievances submitted by Plaintiff.

On three occasions between June 11, 2008, and July 31, 2008, Defendants Armstrong, Ball, Brown, Filion, Laitenen, LaLonde, Mallette, Stephenson, and Woods denied grievances that Plaintiff filed. Defendants Jenkins, Malloy, and Martin (on an unspecified date) denied a grievance that Plaintiff filed. On three occasions between April 30, 2009, and July 21, 2009, Defendants Cunningham and Henson "cancelled Plaintiff's doctor-ordered appointments." Defendant Martin "refused to correct this." On August 18, 2009, Defendant Cunningham "cancelled Plaintiff's doctor-ordered Flagyl

medication." On December 5, 2009, Defendants Filion and Manzardo denied Plaintiff emergency care when Plaintiff was suffering respiratory failure. Between December 23, 2009, and May 26, 2010, Defendants Berlinger, Olson, Perea, Russell, Sibbald, Whitfield, and Woods denied or refused to answer numerous grievances filed by Plaintiff.

In 1997, 2004, October 2008, and February 2010, Defendants Cunnigham, CMS, Kilaru, MDOC and PHS avoided treating Plaintiff by falsely accusing him of suffering from mental illness. In June 2010, Defendant Kilaru refused to issue Plaintiff a special accommodation so that Plaintiff could avoid exposure to "deadly allergens."

Plaintiff alleges that all these actions were undertaken in retaliation for having exercised his constitutional rights.


F.      Allegation VI

As of December 22, 2009, a "medical hold" prevented Plaintiff from being transferred to another facility. On December 22, 2009, Defendant Millette "entered false information in Plaintiff's medical records" removing the medical hold. The following day, Defendants Cunningham, Henson, Olson, and Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for asserting rights to proper medical care through grievances and letters."

G. Allegation VII

From April 2009 through May 2010, Plaintiff requested that the MDOC "issue [a] declaratory ruling" regarding certain provisions of the MDOC prisoner grievance policy. The MDOC did not respond to Plaintiff's request. Plaintiff alleges that Defendants MDOC and PHS "say unwritten policy and practice may be used to deny needed medical care, which persons outside prison normally get." Plaintiff asserts that such is not permissible. Plaintiff requests a "declaratory ruling" on these matters as such "would end confusion."

H. Allegation VIII

Plaintiff is a "suspect" in an "ongoing criminal investigation." When questioned on this matter, Plaintiff "continually asserts his right to remain silent." In response, Defendants Armstrong, Barclay, Isard, Newman, Portes, and Woods "subjected Plaintiff to sleep deprivation, threats on his life and well-being, assaults and demanded incriminating responses. . .with the intent to deprive Plaintiff of his right to remain silent and [right to] counsel in the ongoing investigation."

**STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the

assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

In Counts II-IV of his Second Amended Complaint, Plaintiff asserts that Defendants Ball and Filion denied him medical care and also subjected him to inhumane conditions of confinement in violation of his Eighth Amendment rights. (Dkt. #15 at ¶¶ 131-40). In Counts V-VI of his Second Amended Complaint, Plaintiff asserts that Defendants Ball and Filion failed to properly supervise prison officials who allegedly subjected him to unlawful retaliation. (Dkt. #15 at ¶¶ 141-50). Before addressing the substance of Defendants' motion for summary judgment, the Court must first identify precisely what claims in Plaintiff's Second Amended Complaint are in dispute.

Plaintiff alleges that Defendants Ball and Filion failed to properly supervise various subordinates. (Dkt. #15 at ¶¶ 30, 40). Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998); *Loggins v. Franklin County, Ohio*, 218 Fed. Appx. 466, 470 (6th Cir., Mar. 1, 2007); *Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir., Mar. 24, 2004). Furthermore, many of the "allegations" asserted against Defendants Ball and Filion are nothing more than legal conclusions which fail to state a claim on which relief may be granted. (Dkt. #15 at ¶¶ 17, 30, 44, 49, 50, 68). The undersigned recommends, therefore, that these particular claims be dismissed.

Plaintiff also alleges that Defendants Ball and Filion denied several of his many prison grievances in retaliation for filing "medical grievances and complaint letters." (Dkt. #15 at ¶ 89). The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in

constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

While Plaintiff's allegations satisfy the first element of the analysis, such come up short as to the other two elements. Plaintiff alleges that Defendants denied several grievances he filed. Such does not constitute adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct. *See, e.g., Burgos v. Canino*, 641 F.Supp.2d 443, 454-55 (E.D. Pa. 2009) ("[t]he mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"); *Alexander v. Fritch*, 2010 WL 1257709 at *18 (W.D. Pa., Mar. 26, 2010) (same); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("inconsequential actions" do not satisfy the "adverse action requirement"). With respect to the casual connection element, Plaintiff fails to articulate a chronology of events from which retaliation may plausibly be inferred, but instead offers nothing but "bare allegations of malice," which is insufficient to state a claim. *See Thaddeus-X*, 175 F.3d at 399; *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998). Accordingly, the undersigned recommends that these claims also be dismissed.

Several of the allegations in Plaintiff's complaint, however, are sufficient to state a claim on which relief may be granted. Plaintiff asserts that on July 28, 2008, August 31, 2008, and September 3, 2008, Defendants Ball and Filion, despite knowledge that Plaintiff was suffering from a serious medical condition, failed to secure for Plaintiff appropriate medical care. (Dkt. #15 at ¶ 33). Plaintiff also alleges that Defendant Ball "ignored" Defendant Piazza's treatment directives and refused to timely

refill a prescription for antibiotics. (Dkr. #15 at ¶ 41). Finally, Plaintiff alleges that on December 5, 2009, Defendant Filion denied Plaintiff needed emergency care. (Dkt. #15 at ¶ 43). While less than artfully worded, these particular allegations state a claim on which relief may be granted. The Court now turns to whether Defendants are entitled to summary judgment as to these claims.

        A.        Plaintiff's claim that he was denied treatment on July 28, 2008, August 31, 2008, and September 3, 2008

Plaintiff alleges that on July 28, 2008, August 31, 2008, and September 3, 2008, Defendants Ball and Filion, despite knowledge that Plaintiff was suffering from a serious medical condition, failed to secure for Plaintiff appropriate medical care. Plaintiff alleges that this conduct violates his Eighth Amendment rights.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 101-02. Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

When evaluating the objective prong of this analysis, the Court must first determine whether the alleged injury or medical need is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004); *see also, Cain v. Irvin*, 286 Fed. Appx. 920, 927 (6th Cir., July 17, 2008). If the injury or medical need is obvious, the question becomes whether the plaintiff received treatment "within a reasonable time." *See Blackmore*, 390 F.3d at 899-900 (where the plaintiff's injury or medical need is obvious, he satisfies the objective prong of the analysis by demonstrating that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame"). If, on the other hand, the injury or medical need is not obvious, the plaintiff must submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury." *Id.*

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendants Ball and Filion concede (for purposes of the present motion) that on the dates in question Plaintiff was experiencing a sufficiently serious medical condition to satisfy the objective component of the analysis. With respect to the subjective inquiry, Defendants Ball and Filion assert that they are entitled to relief because "there is no evidence that [they] were subjectively aware that Plaintiff was at a substantial risk of serious harm, and then ignored that risk of harm."

In support of their position, Defendants have each submitted affidavits in which they assert that on the dates in question: "Plaintiff did not notify me that he was at 'imminent danger of further severe physical injury or death.' I had no knowledge that Plaintiff had any serious medical needs that were being ignored." (Dkt. #107, Exhibit 1 at ¶ 4; Dkt. #107, Exhibit 2 at ¶ 5).

In his verified Second Amended Complaint, Plaintiff does not allege that he personally informed Defendants that he was experiencing a severe medical condition necessitating treatment, nor does he allege that he has any firsthand knowledge that Defendants were so informed. Instead, Plaintiff merely asserts the conclusion that Defendants "were informed." Plaintiff has also submitted an affidavit in response to the present motion for summary judgment in which he responds to the aforementioned assertions in Defendants' affidavits. (Dkt. #165, Exhibit D). In his affidavit, Plaintiff does not assert that on the dates in question he informed Defendant Ball or Defendant Filion that he was experiencing a severe medical condition necessitating treatment. Instead, Plaintiff merely makes the vague allegation that (on an unspecified date or dates) he notified Defendants of his various "symptoms." *Id.* at ¶¶ 10, 15. Plaintiff does not assert, however, that he requested medical treatment to treat his symptoms. *Id.*

In sum, Plaintiff has not produced evidence that on the dates in question he notified Defendant Ball or Defendant Filion that he was experiencing a severe medical condition necessitating

treatment. In light of the evidence, the undersigned recommends that Defendants Ball and Filion are both entitled to summary judgment as to these claims.

    B. Plaintiff's claim that Defendant Ball "ignored" Defendant Piazza's treatment directives and refused to timely refill a prescription for antibiotics.

Plaintiff alleges that on an unspecified date, Defendant Ball "ignored" a treatment directive by Defendant Piazza and refused to refill his antibiotic prescription. Plaintiff alleges that this conduct violated his Eighth Amendment rights.

Defendant Ball asserts in her affidavit that she "did not refuse refills for flagyl antibiotics." (Dkt. #107, Exhibit 1 at ¶ 5). Plaintiff counters in his affidavit that in August 2009, Defendant Ball "was one of the medical personnel who refused to process Plaintiff's refill for Flagyl antibiotics." (Dkt. #165, Exhibit D at ¶ 11). In light of the evidence submitted by the parties, the undersigned concludes that Defendant Ball has failed to demonstrate the absence of a genuine dispute of material fact. The undersigned recommends, therefore, that Defendant Ball's motion for summary judgment de denied as to this claim.[2]

    C. Plaintiff's claim that on December 5, 2009, Defendant Filion denied him emergency care.

Plaintiff alleges that on December 5, 2009, he went to Health Services "because of constant gagging." (Dkt. #15 at ¶ 43). Plaintiff informed Defendant that the "nebulizer machine cleared his lungs but did not open his swollen throat causing coughing and gagging." In response, Defendant

---

[2] The undersigned also recommends that Defendant Ball's request for qualified immunity be denied as to this claim, as any reasonable person would have understood that refusing to refill a medical prescription to treat a serious medical condition violated the Eighth Amendment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Filion "ordered Plaintiff to leave Health Services and said 'you're just going to have to put up with it.'" Plaintiff asserts that Defendant Filion violated his Eighth Amendment rights by failing to send him for "emergency care." *Id.*

In her affidavit, Defendant Filion asserts that on the day in question she "received a phone call from the Plaintiff's unit officer requesting a nebulizer treatment." (Dkt. #107, Exhibit 2 at ¶ 6). Defendant Filion then "instructed the Plaintiff to come to health care to receive the treatment." Defendant Filion further asserts that she "did not deny the treatment to the Plaintiff." *Id.* The Court notes that in neither his Second Amended Complaint nor his affidavit, does Plaintiff assert that Defendant Filion refused or failed to provide him with the requested nebulizer treatment. (Dkt. #15; Dkt. #165, Exhibit D). Thus, Defendant Filion's assertion that she provided Plaintiff with the requested nebulizer treatment is unrefuted.

While it is clear from Plaintiff's Second Amended Complaint that Plaintiff believes he should have been provided with unspecified "emergency care," the evidence reveals that Plaintiff received medical treatment. While Plaintiff may believe he should have received better care, allegations of negligence or malpractice do not implicate the Eighth Amendment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or

malpractice is insufficient to establish an Eighth Amendment violation"). Accordingly, the undersigned recommends that Defendant Filion is entitled to summary judgment as to this claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Ball and Filion's Motion for Summary Judgment</u>, (dkt. #106), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendant Filion be dismissed. The undersigned further recommends that Plaintiff's claims against Defendant Ball be dismissed save for his claim that in August 2009, Defendant Ball refused to refill a prescription for antibiotics.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: April 5, 2011  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge