UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY NORTHINGTON,

                Plaintiff,                           Hon. Janet T. Neff

v.                                      Case No. 1:10 CV 424

JIM ARMSTRONG, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Malloy, Stephenson, Jenkins, and Henson's Motion for Summary Judgment</u>.  (Dkt. #176).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

Plaintiff initiated this action on April 30, 2010, against 42 individuals, the Michigan Department of Corrections (MDOC), Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties."   In his sixty-four (64) page certified Second Amended Complaint, Plaintiff asserts numerous claims involving various allegations occurring over a three year period.  The following *factual*[1] allegations are contained in Plaintiff's Second Amended Complaint.  To avoid confusion, Plaintiff's allegations are outlined in the same manner as in his Second Amended Complaint.

_____

[1] In describing Plaintiff's various allegations, the Court has disregarded the numerous legal conclusions articulated by Plaintiff in his Amended Complaint, as well as the great many generalized factual allegations directed at no particular individual or entity.

A.     Allegation I

In May and June 2007, Plaintiff filed grievances against Defendant Berghuis regarding an alleged "laundry scheme," pursuant to which inmates were improperly charged for lost laundry. Plaintiff was warned by a prison employee "of the retaliation to come."  On June 6, 2007, Defendants Berghuis and Shackleton transferred Plaintiff from the Brooks Correctional Facility to the Straits Correctional Facility.  Plaintiff alleges that he was transferred for improper retaliatory reasons and that such was "ordered by" Defendant Berghuis.

From July 1, 2007, through July 13, 2007, Defendant Campbell "said he would 'get Northington' and mentioned Plaintiff filing grievances."  On July 13, 2007, at 1200 hours, Defendant Lawnichak authorized Plaintiff to attend chow.  Defendant Campbell, however, alleging that Plaintiff arrived at the dining facility before 1200 hours, charged Plaintiff with a major misconduct violation for being "out of place."  A prison employee later told Plaintiff that he had been charged with this violation as retaliation for asserting "complaints of embezzlement" against Defendant Berghuis.  Plaintiff was later informed by another prison employee that "the misconduct [charge] was retaliation ordered from 'higher-up.'"  On September 4, 2007, Defendants MDOC and Sherry ordered Plaintiff's transfer from the Straits Correctional Facility to the Kinross Correctional Facility.  This transfer was ordered as "retaliation for Plaintiff asserting rights at misconduct hearing and through grievances."

On three occasions between May 31, 2007, and November 2, 2007, Defendant Menard and/or Defendant Overton charged Plaintiff's prisoner account five dollars for Health Service appointments Plaintiff did not request.  This action was undertaken in retaliation for "Plaintiff seeking medical care. . .and defending his lawful rights."  Defendants Armstrong, Berghuis, Brown, LaLonde, Woods, and MDOC were informed of this conduct, but refused to act for retaliatory purposes.

B.      Allegation II

Plaintiff suffers from airway necrosis, permanent injury to internal organs, scarred lungs, and severe respiratory disease.  Plaintiff also experiences "ever-increasing reaction with continued exposure to allergens common to certain locations of all MDOC prisons, and has an unresolved antibiotic resistant infection."  As a result, three or more times daily, Plaintiff's "respiratory airways swell shut and fill with fluids so he cannot breath[e] from 15-seconds to 2-minutes each time."  It takes "hours" for Plaintiff to recover from this incidents.  Plaintiff also experiences difficulty sleeping.  In February and March 2010, Defendant Kilaru denied Plaintiff care and subsequently determined that Plaintiff's various physical ailments were caused by "mental illness."

C.      Allegation III

On April 8, 2008, Plaintiff, who was experiencing a fever and pneumonia, submitted a health care request to which he received no response.  On three occasions between April 18, 2008, and June 5, 2008, Plaintiff "sent letters requesting medical care" and, furthermore, inquiring as to why he had still not received care in response to his April 8, 2008 request.  On June 10, 2008, Plaintiff met with Defendant Henson.  During this meeting, Plaintiff exhibited "raspy breathing and coughed-up fluids."  Plaintiff also reported that "he had not slept 4 of the last 5 nights because his lungs and respiratory airways swelled shut and filled with fluids."  Defendant Henson concluded that "nothing was wrong" with Plaintiff and "refused to refer [him] for further care."

On June 20, 2008, Plaintiff was examined by Defendant Wilson who concluded that Plaintiff was suffering coniosis and scarred lungs caused by "lack of care."  Defendant Wilson prescribed for Plaintiff a seven-day course of antibiotics.  On June 29, 2008, Plaintiff requested "follow-

up care" because his respiratory symptoms had returned.  On July 2, 2008, Defendant Henson falsely concluded that Plaintiff did not require medical care.

On three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendants CMS, Armstrong, Ball, Berlinger, Cunningham, Filion, Jenkins, Malloy, Martin, MDOC, Stephenson, Sibbald, and Woods that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping.  These Defendants "refused to see [that] Plaintiff got proper medical care."

On November 19, 2008, February 12, 2009, and March 12, 2009, Dr. Nagarja and Defendant Piazza prescribed for Plaintiff antibiotics which eliminated his symptoms.  Five days after these prescriptions expired, however, Plaintiff's symptoms returned.  In March 2009, Defendant Piazza informed Plaintiff that "past lack of care" was the cause of his airway necrosis.

While Plaintiff was taking his prescribed antibiotics, he experienced a "severe allergic reaction" to laundry detergent, disinfectant, cocoa butter lotion, soap, and bath powder.  On three occasions between March 2009 and June 2009, Defendant Piazza "said he should issue but refused to issue [a] special accommodation to prevent Plaintiff being exposed to such allergens."  Defendants Cunningham and Woods "refused to let Defendant Piazza issue [a] special accommodation" to Plaintiff.  On or about June 15, 2009, Defendants Mackie, Martin, Woods, and MDOC "prohibited Defendant Piazza [from] issuing [a] special accommodation for Plaintiff to be in a single-man cell."  Defendants Berlinger and Sibbald subsequently "obstructed administrative relief."

In April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments contrary to orders of Dr. Piazza made in February, March and June 2009."  Defendants Ball, Filion, Henson, Jenkins, Martin, and Stephenson "refused to correct

this." Defendants Cunningham, Ball, Jenkins, Stephenson, and Martin (on an unspecified date or dates) "ignored Dr. Piazza by refusing to timely refill his order for Flagyl antibiotics."

On December 5, 2009, at 6:40 p.m., Plaintiff went to Health Services "because of constant gagging." When he arrived at Health Services, Defendant Filion told Plaintiff, "you're just going to have to put up with it." At 10:00 p.m., Plaintiff returned to Health Services. Plaintiff's throat was swollen and he "coughed-up fluids. . .every 20-seconds." Defendant Manzardo told Plaintiff to "live with it" and gave him seven honey packets with instructions to "use in hot tea." At 10:30 p.m., Plaintiff drank hot tea into which he had poured one of the honey packets. Plaintiff immediately vomited and "had a more swollen throat." Plaintiff then contacted Health Services by telephone and was told by Defendant Manzardo to "live with it."

On December 22, 2009, Defendant Millette told Plaintiff that he: (1) would not attempt to uncover the cause of Plaintiff's respiratory illness; (2) would not issue a special accommodation to prevent Plaintiff being exposed to life-threatening allergens; and (3) would not order tests to determine the allergens in question. Plaintiff informed Defendant Russell of these various denials of medical treatment, but Russell "refused to correct them."

On December 23, 2009, Defendants Cunningham, Mackie, Olson, and/or Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for his grievances and letters of complaint seeking proper care and remedy for his illness."

In February and March 2010, Plaintiff was examined by Defendant Kilaru who informed Plaintiff that his "lungs were scarred and he had coniosis from MDOC's prior lack of care." Defendant Kilaru "refused to do anything" to determine the cause of or treat Plaintiff's symptoms or illness. Plaintiff informed Defendant Kilaru that his "throat swells shut and fills with fluids" when exposed to:

(1) aroma; (2) dust; (3) fumes or vapors from cocoa butter lotions and soaps; (4) bath powder; (5) laundry detergent; (6) disinfectant; and (7) certain soaps.  Plaintiff asked Defendant Kilaru to perform testing to determine the cause of his various allergic reactions that cause his throat to "swell shut and fill with fluids."  Defendant Kilaru responded that "he would not order test(s) to determine allergens, nor determine cause of or treat allergies."  Defendant Kilaru also refused Plaintiff's request for a special accommodation to prevent his exposure to these allergens.

Every month from December 2009 through June 2010, Defendants Caruso, Martin, Perea, Russell, MDOC, and PHS were informed of the aforementioned conduct of Defendants Cunningham, Filion, Kilaru, Manzardo, Millette, Piazza, but "refused to end the denial(s) of medical care to Plaintiff."


D.      Allegation IV

On November 14, 2008, Plaintiff was involuntarily moved into a "common cell" with two other inmates, Defendants Barclay and Portes.  Plaintiff was moved in retaliation for "filing grievances and complaints."  From November 14, 2008, through, December 23, 2009, Defendants Barclay and Portes knowingly and deliberately "exposed Plaintiff to allergens" causing Plaintiff's condition to worsen.  Defendants Barclay and Portes also "would stay awake and create loud noises" at night to prevent Plaintiff from sleeping.  Defendants Armstrong, Caruso, Harrington, Harwood, Isard, LaLonde, Mackie, Olson, Sibbald, and Woods were informed of the "unnecessary night-time noises and disturbances being caused by Defendants Barclay and Portes," but "took no action."  The conduct by Defendants Barclay and Portes was "orchestrated" by unknown officials of the Michigan State Police.  On several occasions, Plaintiff requested to be moved to another cell, but his requests were denied by Defendants Harrington, Harwood, Isard, LaLonde, Mackie, Olson, and Woods.

E.     Allegation V

Between April 21, 2008, and September 16, 2008, Defendant Berlinger denied several grievances Plaintiff filed.  On September 17, 2008, Defendants Berlinger and Woods placed Plaintiff on modified grievance access in retaliation for "Plaintiff's past grievances."  On October 21, 2008, Defendant Berlinger denied Plaintiff's request to file a grievance.  On October 22, 2008, Defendant Isard, at Defendant Berlinger's request, falsely charged Plaintiff with a major misconduct violation. Between October 24, 2008, and December 23, 2009, Defendant Berlinger denied numerous grievances and/or requests for grievances submitted by Plaintiff.

On three occasions between June 11, 2008, and July 31, 2008, Defendants Armstrong, Ball, Brown, Filion, Laitenen, LaLonde, Mallette, Stephenson, and Woods denied grievances that Plaintiff filed.  Defendants Jenkins, Malloy, and Martin (on an unspecified date) denied a grievance that Plaintiff filed.  On three occasions between April 30, 2009, and July 21, 2009, Defendants Cunningham and Henson "cancelled Plaintiff's doctor-ordered appointments."  Defendant Martin "refused to correct this."  On August 18, 2009, Defendant Cunningham "cancelled Plaintiff's doctor-ordered Flagyl medication."  On December 5, 2009, Defendants Filion and Manzardo denied Plaintiff emergency care when Plaintiff was suffering respiratory failure.  Between December 23, 2009, and May 26, 2010, Defendants Berlinger, Olson, Perea, Russell, Sibbald, Whitfield, and Woods denied or refused to answer numerous grievances filed by Plaintiff.

In 1997, 2004, October 2008, and February 2010, Defendants Cunnigham, CMS, Kilaru, MDOC and PHS avoided treating Plaintiff by falsely accusing him of suffering from mental illness.  In June 2010, Defendant Kilaru refused to issue Plaintiff a special accommodation so that Plaintiff could avoid exposure to "deadly allergens."

Plaintiff alleges that all these actions were undertaken in retaliation for having exercised his constitutional rights.

### F.      Allegation VI

As of December 22, 2009, a "medical hold" prevented Plaintiff from being transferred to another facility.  On December 22, 2009, Defendant Millette "entered false information in Plaintiff's medical records" removing the medical hold.  The following day, Defendants Cunningham, Henson, Olson, and Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for asserting rights to proper medical care through grievances and letters."

### G.      Allegation VII

From April 2009 through May 2010, Plaintiff requested that the MDOC "issue [a] declaratory ruling" regarding certain provisions of the MDOC prisoner grievance policy.  The MDOC did not respond to Plaintiff's request.  Plaintiff alleges that Defendants MDOC and PHS "say unwritten policy and practice may be used to deny needed medical care, which persons outside prison normally get."  Plaintiff asserts that such is not permissible.  Plaintiff requests a "declaratory ruling" on these matters as such "would end confusion."

### H.      Allegation VIII

Plaintiff is a "suspect" in an "ongoing criminal investigation."  When questioned on this matter, Plaintiff "continually asserts his right to remain silent."  In response, Defendants Armstrong, Barclay, Isard, Newman, Portes, and Woods "subjected Plaintiff to sleep deprivation, threats on his life

and well-being, assaults and demanded incriminating responses. . .with the intent to deprive Plaintiff

of his right to remain silent and [right to] counsel in the ongoing investigation."

## **STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential

element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not

change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.      **Defendant Malloy**

        A.      Eighth Amendment Claim

        In his verified Second Amended Complaint, Plaintiff alleges that on three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendant Malloy that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping.  (Dkt. #15 at ¶ 33). Defendant Malloy "refused to see [that] Plaintiff got proper medical care."  Plaintiff alleges that Defendant Malloy was "deliberately indifferent" to the likelihood that Plaintiff would suffer "imminent danger of further severe physical injury."  *Id.*  While not expressly identified as such, the Court interprets Plaintiff's allegations as asserting a claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment.

        The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the

-11-

unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of

medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Malloy asserts that during the relevant time period he was employed as a Regional Health Administrator. (Dkt. #177, Exhibit 1). Malloy asserts that in this capacity he was responsible for oversight of the administrative, nursing, and dental services provided to prisoners in the Northern Region. Malloy asserts that during the time period in question, Plaintiff received medical treatment from "medical practitioners" over whom Malloy "ha[s] no supervisory or clinical authority." *Id.* Defendant Malloy argues, therefore, that he is entitled to summary judgment. The Court disagrees.

In simple terms, Plaintiff clearly alleges (in a verified complaint) that he informed Defendant Malloy on several occasions that he was experiencing a severe medical impairment and that Defendant Malloy ignored his requests for treatment. Defendant Malloy has submitted no evidence to the contrary. The fact that Defendant Malloy does not appear to have been a front line medical services provider or may not have possessed supervisory authority over such providers is not particularly relevant. The Eighth Amendment does not apply only to front line or primary medical service providers, but rather applies to anybody who is aware that a prisoner is suffering from a serious medical condition and fails to take reasonable action in response thereto. The undersigned, therefore, recommends that Defendant Malloy's motion for summary judgment be denied as to this claim.

B.      Retaliation

Plaintiff also alleges that Defendant Malloy falsely denied a grievance he filed as retaliation for filing grievances and complaint letters.  (Dkt. #15 at ¶ 89).

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Even if the Court assumes that Plaintiff was engaged in protected conduct, Plaintiff cannot satisfy the adverse action or causation elements.  The denial of a grievance does not constitute adverse action sufficient to support a claim of retaliation.  *See, e.g., Green v. Caruso*, 2011 WL 1113392 at *10 (W.D.Mich., Mar. 24, 2011) (citation omitted); *Ivory v. Bastian*, 2011 WL 766531 at *7 (W.D. Mich., Feb. 25, 2011) (citations omitted).

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence."  *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also, Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation

must include a chronology of events from which retaliation may plausibly be inferred"). Plaintiff offers

no evidence that Defendant Malloy's action were in any way motivated by his protected conduct.

Instead, Plaintiff relies on unsupported conclusions and "bare allegations." Such is insufficient to

maintain a retaliation claim.

The undersigned recommends, therefore, that Defendant Malloy is entitled to summary

judgment as to Plaintiff's retaliation claim.


## II.        Defendant Stephenson

### A.        Eighth Amendment Claims

In his verified Second Amended Complaint, Plaintiff alleges that on three occasions

between July 28, 2008, and September 3, 2008, Plaintiff informed Defendant Stephenson that his

"airways [were] filling shut [and] filling with fluids" which prevented him from sleeping. (Dkt. #15 at

¶ 33). Defendant Stephenson "refused to see [that] Plaintiff got proper medical care." *Id.* Plaintiff also

alleges that Defendant Stephenson (on an unspecified date or dates) "ignored Dr. Piazza by refusing to

timely refill his order for Flagyl antibiotics." (Dkt. #15 at ¶ 41).

In support of her motion for summary judgment, Defendant Stephenson has submitted

an affidavit in which she asserts that "the prescribing of medical treatment and special accommodations

are not within my authority." (Dkt. #177, Exhibit 2). Stephenson further asserts that she "is not

responsible for direct patient care." *Id.* Plaintiff alleges (in a verified complaint) that he informed

Defendant Stephenson on several occasions that he was experiencing a severe medical impairment and

that Defendant Stephenson ignored his requests for treatment. Plaintiff also alleges that Defendant

Stephenson refused to refill a prescription for antibiotics. Defendant Stephenson has submitted no

evidence to the contrary.  Again, the fact that Defendant Stephenson does not appear to have been a front line medical services provider or may not have possessed supervisory authority over such providers is not particularly relevant.   The undersigned, therefore, recommends that Defendant Stephenson's motion for summary judgment be denied as to these two claims.

Plaintiff also alleges that in April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments" contrary to Dr. Piazza's orders. (Dkt. #15 at ¶ 40).  Plaintiff alleges that Defendant Stephenson "refused to correct this."  *Id.*  This claim fails for two reasons.  First, liability in a § 1983 action cannot be premised on an alleged failure to act, but must instead be premised on active unconstitutional behavior.  *See Spencer v. Bouchard*, 449 F.3d 721, 730 (6th Cir. 2006).  Secondly, Plaintiff has not alleged nor submitted evidence that Defendant Stephenson was aware of the alleged actions of Defendants Cunningham or Henson.  Thus, Plaintiff has failed to establish that Defendant Stephenson "actually knew" that he "faced a substantial risk of serious harm."  Accordingly, the undersigned recommends that Defendant Stephenson is entitled to summary judgment as to this claim.

### B.     Retaliation

Plaintiff alleges that Defendant Stephenson denied several grievances he filed as retaliation for filing grievances and complaint letters.  (Dkt. #15 at ¶ 89).  For the very same reasons articulated above with respect to Defendant Malloy, the undersigned recommends that Defendant Stephenson is entitled to summary judgment as to Plaintiff's retaliation claims.

**III.**          **Defendant Jenkins**

In his verified Second Amended Complaint, Plaintiff alleges that on three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendant Jenkins that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping.  (Dkt. #15 at ¶ 33). Defendant Jenkins "refused to see [that] Plaintiff got proper medical care."  *Id.*  Plaintiff also alleges that Defendant Jenkins (on an unspecified date or dates) "ignored Dr. Piazza by refusing to timely refill his order for Flagyl antibiotics." (Dkt. #15 at ¶ 41).  While Defendant Jenkins has submitted an affidavit in support of her motion for summary judgment, such fails to address these particular allegations.  (Dkt. #177, Exhibit 3).  In light of Defendant Jenkins' failure to support this aspect of her motion for summary judgment with evidence, the undersigned recommends that her motion for summary judgment be denied as to these two claims.

Plaintiff also alleges that in April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments" contrary to Dr. Piazza's orders. (Dkt. #15 at ¶ 40).  Plaintiff alleges that Defendant Jenkins "refused to correct this."  *Id.*  For the very same reasons articulated in the preceding section with respect to Defendant Stephenson, the undersigned recommends that Defendant Jenkins is entitled to summary judgment as to this particular claim.

**B.**          Retaliation

Plaintiff alleges that Defendant Jenkins denied a grievance he filed as retaliation for filing grievances and complaint letters.  (Dkt. #15 at ¶ 89).  For the very same reasons articulated above with respect to Defendant Malloy and Defendant Stephenson, the undersigned recommends that Defendant Jenkins is entitled to summary judgment as to Plaintiff's retaliation claim.

-17-

**IV.**        **Defendant Henson**

A.        Eighth Amendment

In his verified Second Amended Complaint, Plaintiff alleges that on June 10, 2008, he was examined by Defendant Henson.  (Dkt. #15 at ¶ 22).  Plaintiff exhibited "raspy breathing and coughed-up fluids."  Plaintiff also reported that "he had not slept 4 of the last 5 nights because his lungs and respiratory airways swelled shut and filled with fluids."  Defendant Henson concluded that "nothing was wrong" with Plaintiff and "refused to refer [him] for further care."  *Id.*  Plaintiff alleges that on July 2, 2008, Defendant Henson falsely concluded that he did not require medical care.  (Dkt. #15 at ¶ 32).

Plaintiff alleges that in April and July 2009, Defendant Henson "cancelled Plaintiff's regular chronic care and other appointments contrary to orders of Dr. Piazza made in February, March and June 2009."  (Dkt. #15 at ¶ 40).  Finally, Plaintiff alleges that on three occasions between April 30, 2009, and July 21, 2009, Defendant Henson "cancelled Plaintiff's doctor-ordered appointments."  (Dkt. #15 at ¶ 89).

With respect to Plaintiff's allegations concerning his June 10, 2008 examination, Defendant Henson has submitted an affidavit in which she acknowledges that she examined Plaintiff on this date.  (Dkt. #177, Exhibit 4).  Defendant Henson asserts that her examination revealed "no abnormal findings."  *Id.*  Plaintiff has submitted no evidence to the contrary.  As previously noted, to the extent Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, such fails to implicate the Eighth Amendment.  With respect to this particular claim, Plaintiff can at most establish that he disagrees with Defendant Henson's medical judgment and ability.  The Court reaches the same conclusion with respect to Plaintiff's allegation that Defendant Henson, on July 2,

2008, determined that Plaintiff did not require medical care.  Accordingly, the undersigned recommends that Defendant Henson is entitled to summary judgment as to these particular claims.

As for the claims that Defendant Henson cancelled several medical appointments that had been scheduled for Plaintiff by a physician, Defendant Henson offers no evidence to refute the allegations in Plaintiff's verified complaint.  Considering Defendant Henson's failure to support this aspect of her motion for summary judgment with evidence, the undersigned recommends that her motion for summary judgment be denied as to these claims.

### B.      Retaliation

Plaintiff alleges that on December 23, 2009, Defendant Henson make the decision to transfer Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for asserting rights to proper medical care through grievances and letters."  (Dkt. #15 at ¶ 107).  Even if the Court assumes that Plaintiff was engaged in protect conduct, he cannot satisfy the second or third elements of the retaliation analysis articulated above.

### 1.      Adverse Action Which Would Deter a Person of Ordinary Firmness

As is well recognized, "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility."  *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Generally, a transfer to another prison "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life."  *Jones v. Caruso*, 2011 WL 1586075 at *3 (6th Cir., Apr. 28, 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)).  Accordingly, a retaliation claim

based on an allegedly retaliatory transfer "ordinarily should be characterized as *de minimis* and dismissed at the summary judgment stage." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 703).

There is an exception to this general rule for circumstances in which "foreseeable, negative consequences inextricably follow from the transfer." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02). The type of negative consequences sufficient to satisfy this exception include the loss of a high-paying prison job, a reduced ability to meet with a lawyer, or other interference with the ability to engage in protected conduct. *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02); *Hix*, 196 Fed. Appx. at 358. Thus, to satisfy this exception, Plaintiff must establish that (1) he suffered sufficiently negative consequences, (2) that such inextricably resulted from his transfer, and (3) Defendant knew or should have known that such negative consequences would result from the transfer in question. *Jones*, 2011 WL 1586075 at *3.

While Plaintiff may have been inconvenienced by the transfer in question, he has failed to demonstrate that he experienced sufficiently negative consequences as a result of the transfer. Plaintiff has also failed to establish that any negative consequences he may have experienced "inextricably follow[ed] from the transfer." Finally, even assuming Plaintiff could establish such, Plaintiff has failed to establish that Defendant Henson knew or should have known that such negative consequences would result from his transfer. Thus, the transfer in question was simply a *de minimis* incident of ordinary prison life and could not have deterred a person of ordinary firmness from engaging in protected activity.

2.  Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged.  In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence."  *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").  Plaintiff offers no evidence that Defendant Henson's actions were in any way motivated by his protected conduct.  Instead, Plaintiff relies on unsupported conclusions and "bare allegations."  Such is insufficient to maintain a retaliation claim.  Accordingly, the undersigned recommends that Defendant Henson is entitled to summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants Malloy, Stephenson, Jenkins, and Henson's Motion for Summary Judgment</u>, (dkt. #176), be **granted in part and denied in part**.  Specifically, the undersigned recommends that Plaintiff's claims against the moving Defendants be resolved as follows: (1) Defendants Malloy, Stephenson, Jenkins, and Henson are all entitled to summary judgment on Plaintiff's various retaliation claims; (2) Defendant Stephenson and Jenkins are both entitled to summary judgment on Plaintiff's Eighth Amendment claim that they "refused to correct" the cancellation of doctor appointments in April and July 2009; and (3) Defendant Henson is entitled to summary judgment on Plaintiff's Eighth Amendment claims arising out of incidents occurring on June 10, 2008, and July 2, 2008.  The undersigned further recommends that Plaintiff's remaining Eighth Amendment claims asserted against Defendants Malloy, Stephenson, Jenkins, and Henson, described above, go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  August 5, 2011                                  _/s/ Ellen S. Carmody_____
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge