UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY NORTHINGTON,

       Plaintiff,                                         Hon. Janet T. Neff

v.                                                            Case No. 1:10 CV 424

JIM ARMSTRONG, et al.,

       Defendants.

_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Berghuis and Berlinger's Motion for Summary Judgment</u>. (Dkt. #111). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

### BACKGROUND

Plaintiff initiated this action on April 30, 2010, against 42 individuals, the Michigan Department of Corrections (MDOC), Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties." In his sixty-four (64) page certified Second Amended Complaint, Plaintiff asserts numerous claims involving various allegations occurring over a three year period. The following *factual*[1] allegations are contained in Plaintiff's Second Amended Complaint. To avoid confusion, Plaintiff's allegations are outlined in the same manner as in his Second Amended Complaint.

---

[1] In describing Plaintiff's various allegations, the Court has disregarded the numerous legal conclusions articulated by Plaintiff in his Amended Complaint, as well as the great many generalized factual allegations directed at no particular individual or entity.

A.      Allegation I

In May and June 2007, Plaintiff filed grievances against Defendant Berghuis regarding an alleged "laundry scheme," pursuant to which inmates were improperly charged for lost laundry. Plaintiff was warned by a prison employee "of the retaliation to come." On June 6, 2007, Defendants Berghuis and Shackleton transferred Plaintiff from the Brooks Correctional Facility to the Straits Correctional Facility. Plaintiff alleges that he was transferred for improper retaliatory reasons and that such was "ordered by" Defendant Berghuis.

From July 1, 2007, through July 13, 2007, Defendant Campbell "said he would 'get Northington' and mentioned Plaintiff filing grievances." On July 13, 2007, at 1200 hours, Defendant Lawnichak authorized Plaintiff to attend chow. Defendant Campbell, however, alleging that Plaintiff arrived at the dining facility before 1200 hours, charged Plaintiff with a major misconduct violation for being "out of place." A prison employee later told Plaintiff that he had been charged with this violation as retaliation for asserting "complaints of embezzlement" against Defendant Berghuis. Plaintiff was later informed by another prison employee that "the misconduct [charge] was retaliation ordered from 'higher-up.'" On September 4, 2007, Defendants MDOC and Sherry ordered Plaintiff's transfer from the Straits Correctional Facility to the Kinross Correctional Facility. This transfer was ordered as "retaliation for Plaintiff asserting rights at misconduct hearing and through grievances."

On three occasions between May 31, 2007, and November 2, 2007, Defendant Menard and/or Defendant Overton charged Plaintiff's prisoner account five dollars for Health Service appointments Plaintiff did not request. This action was undertaken in retaliation for "Plaintiff seeking medical care. . .and defending his lawful rights." Defendants Armstrong, Berghuis, Brown, LaLonde, Woods, and MDOC were informed of this conduct, but refused to act for retaliatory purposes.

B.     Allegation II

Plaintiff suffers from airway necrosis, permanent injury to internal organs, scarred lungs, and severe respiratory disease. Plaintiff also experiences "ever-increasing reaction with continued exposure to allergens common to certain locations of all MDOC prisons, and has an unresolved antibiotic resistant infection." As a result, three or more times daily, Plaintiff's "respiratory airways swell shut and fill with fluids so he cannot breath[e] from 15-seconds to 2-minutes each time." It takes "hours" for Plaintiff to recover from this incidents. Plaintiff also experiences difficulty sleeping. In February and March 2010, Defendant Kilaru denied Plaintiff care and subsequently determined that Plaintiff's various physical ailments were caused by "mental illness."

C.     Allegation III

On April 8, 2008, Plaintiff, who was experiencing a fever and pneumonia, submitted a health care request to which he received no response. On three occasions between April 18, 2008, and June 5, 2008, Plaintiff "sent letters requesting medical care" and, furthermore, inquiring as to why he had still not received care in response to his April 8, 2008 request. On June 10, 2008, Plaintiff met with Defendant Henson. During this meeting, Plaintiff exhibited "raspy breathing and coughed-up fluids." Plaintiff also reported that "he had not slept 4 of the last 5 nights because his lungs and respiratory airways swelled shut and filled with fluids." Defendant Henson concluded that "nothing was wrong" with Plaintiff and "refused to refer [him] for further care."

On June 20, 2008, Plaintiff was examined by Defendant Wilson who concluded that Plaintiff was suffering coniosis and scarred lungs caused by "lack of care." Defendant Wilson prescribed for Plaintiff a seven-day course of antibiotics. On June 29, 2008, Plaintiff requested "follow-

up care" because his respiratory symptoms had returned. On July 2, 2008, Defendant Henson falsely concluded that Plaintiff did not require medical care.

On three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendants CMS, Armstrong, Ball, Berlinger, Cunningham, Filion, Jenkins, Malloy, Martin, MDOC, Stephenson, Sibbald, and Woods that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping. These Defendants "refused to see [that] Plaintiff got proper medical care."

On November 19, 2008, February 12, 2009, and March 12, 2009, Dr. Nagarja and Defendant Piazza prescribed for Plaintiff antibiotics which eliminated his symptoms. Five days after these prescriptions expired, however, Plaintiff's symptoms returned. In March 2009, Defendant Piazza informed Plaintiff that "past lack of care" was the cause of his airway necrosis.

While Plaintiff was taking his prescribed antibiotics, he experienced a "severe allergic reaction" to laundry detergent, disinfectant, cocoa butter lotion, soap, and bath powder. On three occasions between March 2009 and June 2009, Defendant Piazza "said he should issue but refused to issue [a] special accommodation to prevent Plaintiff being exposed to such allergens." Defendants Cunningham and Woods "refused to let Defendant Piazza issue [a] special accommodation" to Plaintiff. On or about June 15, 2009, Defendants Mackie, Martin, Woods, and MDOC "prohibited Defendant Piazza [from] issuing [a] special accommodation for Plaintiff to be in a single-man cell." Defendants Berlinger and Sibbald subsequently "obstructed administrative relief."

In April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments contrary to orders of Dr. Piazza made in February, March and June 2009." This action was taken in retaliation "for Plaintiff's past grievances and letters of complaint." Defendants Ball, Filion, Henson, Jenkins, Martin, and Stephenson "refused to correct this."

Defendants Cunningham, Ball, Jenkins, Stephenson, and Martin (on an unspecified date or dates) "ignored Dr. Piazza by refusing to timely refill his order for Flagyl antibiotics."

On December 5, 2009, at 6:40 p.m., Plaintiff went to Health Services "because of constant gagging." When he arrived at Health Services, Defendant Filion told Plaintiff, "you're just going to have to put up with it." At 10:00 p.m., Plaintiff returned to Health Services. Plaintiff's throat was swollen and he "coughed-up fluids. . .every 20-seconds." Defendant Manzardo told Plaintiff to "live with it" and gave him seven honey packets with instructions to "use in hot tea." At 10:30 p.m., Plaintiff drank hot tea into which he had poured one of the honey packets. Plaintiff immediately vomited and "had a more swollen throat." Plaintiff then contacted Health Services by telephone and was told by Defendant Manzardo to "live with it."

On December 22, 2009, Defendant Millette told Plaintiff that he: (1) would not attempt to uncover the cause of Plaintiff's respiratory illness; (2) would not issue a special accommodation to prevent Plaintiff being exposed to life-threatening allergens; and (3) would not order tests to determine the allergens in question. Plaintiff informed Defendant Russell of these various denials of medical treatment, but Russell "refused to correct them."

On December 23, 2009, Defendants Cunningham, Mackie, Olson, and/or Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for his grievances and letters of complaint seeking proper care and remedy for his illness."

In February and March 2010, Plaintiff was examined by Defendant Kilaru who informed Plaintiff that his "lungs were scarred and he had coniosis from MDOC's prior lack of care." Defendant Kilaru "refused to do anything" to determine the cause of or treat Plaintiff's symptoms or illness. Plaintiff informed Defendant Kilaru that his "throat swells shut and fills with fluids" when exposed to:

(1) aroma; (2) dust; (3) fumes or vapors from cocoa butter lotions and soaps; (4) bath powder; (5) laundry detergent; (6) disinfectant; and (7) certain soaps. Plaintiff asked Defendant Kilaru to perform testing to determine the cause of his various allergic reactions that cause his throat to "swell shut and fill with fluids." Defendant Kilaru responded that "he would not order test(s) to determine allergens, nor determine cause of or treat allergies." Defendant Kilaru also refused Plaintiff's request for a special accommodation to prevent his exposure to these allergens.

Every month from December 2009 through June 2010, Defendants Caruso, Martin, Perea, Russell, MDOC, and PHS were informed of the aforementioned conduct of Defendants Cunningham, Filion, Kilaru, Manzardo, Millette, Piazza, but "refused to end the denial(s) of medical care to Plaintiff."

### D. Allegation IV

On November 14, 2008, Plaintiff was involuntarily moved into a "common cell" with two other inmates, Defendants Barclay and Portes. Plaintiff was moved in retaliation for "filing grievances and complaints." From November 14, 2008, through, December 23, 2009, Defendants Barclay and Portes knowingly and deliberately "exposed Plaintiff to allergens" causing Plaintiff's condition to worsen. Defendants Barclay and Portes also "would stay awake and create loud noises" at night to prevent Plaintiff from sleeping. Defendants Armstrong, Caruso, Harrington, Harwood, Isard, LaLonde, Mackie, Olson, Sibbald, and Woods were informed of the "unnecessary night-time noises and disturbances being caused by Defendants Barclay and Portes," but "took no action." The conduct by Defendants Barclay and Portes was "orchestrated" by unknown officials of the Michigan State Police. On several occasions, Plaintiff requested to be moved to another cell, but his requests were denied by Defendants Harrington, Harwood, Isard, LaLonde, Mackie, Olson, and Woods.

E. Allegation V

Between April 21, 2008, and September 16, 2008, Defendant Berlinger denied several grievances Plaintiff filed. On September 17, 2008, Defendants Berlinger and Woods placed Plaintiff on modified grievance access in retaliation for "Plaintiff's past grievances." On October 21, 2008, Defendant Berlinger denied Plaintiff's request to file a grievance. On October 22, 2008, Defendant Isard, at Defendant Berlinger's request, falsely charged Plaintiff with a major misconduct violation. Between October 24, 2008, and December 23, 2009, Defendant Berlinger denied numerous grievances and/or requests for grievances submitted by Plaintiff.

On three occasions between June 11, 2008, and July 31, 2008, Defendants Armstrong, Ball, Brown, Filion, Laitenen, LaLonde, Mallette, Stephenson, and Woods denied grievances that Plaintiff filed. Defendants Jenkins, Malloy, and Martin (on an unspecified date) denied a grievance that Plaintiff filed. On three occasions between April 30, 2009, and July 21, 2009, Defendants Cunningham and Henson "cancelled Plaintiff's doctor-ordered appointments." Defendant Martin "refused to correct this." On August 18, 2009, Defendant Cunningham "cancelled Plaintiff's doctor-ordered Flagyl medication." On December 5, 2009, Defendants Filion and Manzardo denied Plaintiff emergency care when Plaintiff was suffering respiratory failure. Between December 23, 2009, and May 26, 2010, Defendants Berlinger, Olson, Perea, Russell, Sibbald, Whitfield, and Woods denied or refused to answer numerous grievances filed by Plaintiff.

In 1997, 2004, October 2008, and February 2010, Defendants Cunnigham, CMS, Kilaru, MDOC and PHS avoided treating Plaintiff by falsely accusing him of suffering from mental illness. In June 2010, Defendant Kilaru refused to issue Plaintiff a special accommodation so that Plaintiff could avoid exposure to "deadly allergens."

Plaintiff alleges that all these actions were undertaken in retaliation for having exercised his constitutional rights.

F.     Allegation VI

As of December 22, 2009, a "medical hold" prevented Plaintiff from being transferred to another facility. On December 22, 2009, Defendant Millette "entered false information in Plaintiff's medical records" removing the medical hold. The following day, Defendants Cunningham, Henson, Olson, and Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for asserting rights to proper medical care through grievances and letters."

G.     Allegation VII

From April 2009 through May 2010, Plaintiff requested that the MDOC "issue [a] declaratory ruling" regarding certain provisions of the MDOC prisoner grievance policy. The MDOC did not respond to Plaintiff's request. Plaintiff alleges that Defendants MDOC and PHS "say unwritten policy and practice may be used to deny needed medical care, which persons outside prison normally get." Plaintiff asserts that such is not permissible. Plaintiff requests a "declaratory ruling" on these matters as such "would end confusion."

H.     Allegation VIII

Plaintiff is a "suspect" in an "ongoing criminal investigation." When questioned on this matter, Plaintiff "continually asserts his right to remain silent." In response, Defendants Armstrong, Barclay, Isard, Newman, Portes, and Woods "subjected Plaintiff to sleep deprivation, threats on his life

and well-being, assaults and demanded incriminating responses. . .with the intent to deprive Plaintiff of his right to remain silent and [right to] counsel in the ongoing investigation."

## **STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **Defendant Berghuis**

   A.     Retaliation Claim - Transfer

As discussed above, Plaintiff alleges that on June 6, 2007, he was transferred from the Brooks Correctional Facility to the Straits Correctional Facility. (Dkt. #15 at ¶¶ 1-2). Plaintiff alleges that Defendant Berghuis ordered this transfer as retaliation for grievances he filed. *Id.*

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendants do not contest that Plaintiff was engaged in protected conduct, but assert that Plaintiff cannot prevail on either the second or third elements of the analysis. The Court agrees.

1.  Adverse Action Which Would Deter a Person of Ordinary Firmness

As is well recognized, "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Generally, a transfer to another prison "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 2011 WL 1586075 at *3 (6th Cir., Apr. 28, 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). Accordingly, a retaliation claim based on an allegedly retaliatory transfer "ordinarily should be characterized as *de minimis* and dismissed at the summary judgment stage." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 703).

There is an exception to this general rule for circumstances in which "foreseeable, negative consequences inextricably follow from the transfer." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02). The type of negative consequences sufficient to satisfy this exception include the loss of a high-paying prison job, a reduced ability to meet with a lawyer, or other interference with the ability to engage in protected conduct. *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02); *Hix*, 196 Fed. Appx. at 358. Thus, to satisfy this exception, Plaintiff must establish that (1) he suffered sufficiently negative consequences, (2) that such inextricably resulted from his transfer, and (3) Defendant knew or should have known that such negative consequences would result from the transfer in question. *Jones*, 2011 WL 1586075 at *3.

While Plaintiff may have been inconvenienced by the challenged transfer, he has failed to demonstrate that he experienced sufficiently negative consequences as a result of the transfer. Plaintiff has failed to establish that any negative consequences he may have experienced "inextricably

follow[ed] from the transfer." Finally, even assuming Plaintiff could establish such, Plaintiff has failed to establish that Defendant Berghuis knew or should have known that such negative consequences would result from his transfer. Thus, the transfer in question was simply a *de minimis* incident of ordinary prison life and could not have deterred a person of ordinary firmness from engaging in protected activity.

### 2.  Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Defendant Berghuis has submitted an affidavit in which she asserts that Plaintiff was transferred "as part of a trade with KCF for prisoners who need to be placed into the MPRI program."

(Dkt. #112, Exhibit 1). Plaintiff has submitted no evidence calling this assertion into dispute, but instead merely reiterates unsubstantiated legal conclusions.

In sum, Plaintiff has failed to establish that he suffered any adverse action as a result of the challenged transfer or that the decision to transfer him was in any way motivated by any protected conduct in which he might have engaged. Accordingly, the undersigned recommends that Defendant Berghuis is entitled to summary judgment on this particular claim.

B.      Retaliation Claim - Health Care Co-Pay

Plaintiff alleges that on three occasions between May 31, 2007, and November 2, 2007, Defendant Menard and/or Defendant Overton charged his prisoner account five dollars for Health Service appointments he did not request. (Dkt. #15 at ¶¶ 8-10). According to Plaintiff, this action was undertaken in retaliation for "Plaintiff seeking medical care. . .and defending his lawful rights." (Dkt. #15 at ¶ 11). Defendant Berghuis was later informed of the situation, but refused to act for retaliatory purposes. (Dkt. #15 at ¶ 12).

Even if the Court assumes that Plaintiff was engaged in protected conduct and that he suffered an adverse action, he cannot satisfy the causation element. Defendant Berghuis asserts in her affidavit that while Plaintiff was at the Kinross Correctional Facility (KCF) he attempted to resolve his claim that his prisoner account had been overcharged. (Dkt. #112, Exhibit 1). Berghuis asserts that while at KCF, Plaintiff was afforded an administrative hearing on the matter, an assertion supported by documents attached to Berghuis' affidavit. Berghuis, who serves as warden at the Brooks Correctional Facility (LRF), asserts that after Plaintiff was transferred to LRF he filed a grievance regarding the matter. This grievance was denied at Step I on the ground that officials at LRF lacked jurisdiction to

resolve a dispute that occurred at a different facility. This determination is consistent with MDOC Policy. *See* Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ V (effective July 9, 2007).

Plaintiff appealed the matter to Step II, at which point Defendant Berghuis denied Plaintiff's grievance on the very same ground. This is supported by Berghuis' affidavit as well as the documents attached thereto. Thus, Defendant Berghuis has established that she acted for reasons unrelated to any protected conduct in which Plaintiff may have been engaging. Plaintiff has submitted no evidence calling this evidence into dispute, but instead merely reiterates unsubstantiated legal conclusions. Accordingly, the undersigned recommends that Defendant Berghuis is entitled to summary judgment on this particular claim.

## II.      Defendant Berlinger

At all times relevant to this action, Defendant Berlinger was employed as the Grievance Coordinator at the Kinross Correctional Facility. (Dkt. #112, Exhibit 2). As detailed in Plaintiff's Second Amended Complaint, Plaintiff takes issue with the manner Berlinger processed and addressed Plaintiff's many prison grievances. (Dkt. #15 at ¶¶ 87-90).

As is well recognized, however, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th

Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"). To the extent, therefore, that Plaintiff claims that his rights were violated by the denial of his various grievances, Defendant Berlinger is entitled to summary judgment.

Plaintiff also alleges that Defendant Berlinger denied and otherwise unsatisfactorily processed his grievances in retaliation for Plaintiff having filed grievances and sought medical care. (Dkt. #15 at ¶¶ 87-90, 101). Even if the Court assumes that Plaintiff was engaged in protected conduct, Plaintiff cannot satisfy the adverse action or causation elements. The denial of a grievance does not constitute adverse action sufficient to support a claim of retaliation. *See, e.g., Green v. Caruso*, 2011 WL 1113392 at *10 (W.D.Mich., Mar. 24, 2011) (citation omitted); *Ivory v. Bastian*, 2011 WL 766531 at *7 (W.D. Mich., Feb. 25, 2011) (citations omitted). As for the causation element, Defendant Berlinger asserts in his affidavit that he processed and responded to Plaintiff's grievances in accordance with relevant MDOC policy, unrelated to any protected activity in which Plaintiff may have been engaged. In response, Plaintiff offers nothing more than "bare allegations of malice" and legal conclusions.

In sum, Plaintiff has failed to establish that he suffered any adverse action or that Defendant Berlinger's conduct was in any way motivated by any protected conduct in which he might have engaged. Accordingly, the undersigned recommends that Defendant Berlinger is entitled to summary judgment on Plaintiff's retaliation claims.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Berghuis and Berlinger's Motion for Summary Judgment</u>, (dkt. #111), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 12, 2011   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge