UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY NORTHINGTON,

    Plaintiff,                               Hon. Janet T. Neff

v.                                               Case No. 1:10 CV 424

JIM ARMSTRONG, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Piazza's Motion for Summary Judgment. (Dkt. #406). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

## BACKGROUND

Plaintiff initiated this action on April 30, 2010, against 42 individuals, the Michigan Department of Corrections (MDOC), Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties." In his sixty-four (64) page certified Second Amended Complaint, Plaintiff asserts numerous claims involving various allegations occurring over a three year period. With respect to Defendant Piazza, the following *factual*[1] allegations are contained in Plaintiff's

---

[1] In describing Plaintiff's various allegations, the Court has disregarded the numerous legal conclusions articulated by Plaintiff in his Second Amended Complaint, as well as the great many generalized factual allegations directed at no particular individual or entity.

Second Amended Complaint. To avoid confusion, Plaintiff's allegations are outlined in the same manner as in his Second Amended Complaint.

      A.      Allegation III

On April 8, 2008, Plaintiff, who was experiencing a fever and pneumonia, submitted a health care request to which he received no response. On three occasions between April 18, 2008, and June 5, 2008, Plaintiff "sent letters requesting medical care" and, furthermore, inquiring as to why he had still not received care in response to his April 8, 2008 request. On June 10, 2008, Plaintiff met with Defendant Henson. During this meeting, Plaintiff exhibited "raspy breathing and coughed-up fluids." Plaintiff also reported that "he had not slept 4 of the last 5 nights because his lungs and respiratory airways swelled shut and filled with fluids." Defendant Henson concluded that "nothing was wrong" with Plaintiff and "refused to refer [him] for further care."

On June 20, 2008, Plaintiff was examined by Defendant Wilson who concluded that Plaintiff was suffering coniosis and scarred lungs caused by "lack of care." Defendant Wilson prescribed for Plaintiff a seven-day course of antibiotics. On June 29, 2008, Plaintiff requested "follow-up care" because his respiratory symptoms had returned. On July 2, 2008, Defendant Henson falsely concluded that Plaintiff did not require medical care.

On three occasions between July 28, 2008, and September 3, 2008, Plaintiff informed Defendants CMS, Armstrong, Ball, Berlinger, Cunningham, Filion, Jenkins, Malloy, Martin, MDOC, Stephenson, Sibbald, and Woods that his "airways [were] filling shut [and] filling with fluids" which prevented him from sleeping. These Defendants "refused to see [that] Plaintiff got proper medical care."

On November 19, 2008, February 12, 2009, and March 12, 2009, Dr. Nagarja and Defendant Piazza prescribed for Plaintiff antibiotics which eliminated his symptoms. Five days after these prescriptions expired, however, Plaintiff's symptoms returned. In March 2009, Defendant Piazza informed Plaintiff that "past lack of care" was the cause of his airway necrosis.

While Plaintiff was taking his prescribed antibiotics, he experienced a "severe allergic reaction" to laundry detergent, disinfectant, cocoa butter lotion, soap, and bath powder. On three occasions between March 2009 and June 2009, Defendant Piazza "said he should issue but refused to issue [a] special accommodation to prevent Plaintiff being exposed to such allergens." Defendants Cunningham and Woods "refused to let Defendant Piazza issue [a] special accommodation" to Plaintiff. On or about June 15, 2009, Defendants Mackie, Martin, Woods, and MDOC "prohibited Defendant Piazza [from] issuing [a] special accommodation for Plaintiff to be in a single-man cell." Defendants Berlinger and Sibbald subsequently "obstructed administrative relief."

In April and July 2009, Defendants Cunningham and Henson "cancelled Plaintiff's regular chronic care and other appointments contrary to orders of Dr. Piazza made in February, March and June 2009." This action was taken in retaliation "for Plaintiff's past grievances and letters of complaint." Defendants Ball, Filion, Henson, Jenkins, Martin, and Stephenson "refused to correct this." Defendants Cunningham, Ball, Jenkins, Stephenson, and Martin (on an unspecified date or dates) "ignored Dr. Piazza by refusing to timely refill his order for Flagyl antibiotics."

On December 5, 2009, at 6:40 p.m., Plaintiff went to Health Services "because of constant gagging." When he arrived at Health Services, Defendant Filion told Plaintiff, "you're just going to have to put up with it." At 10:00 p.m., Plaintiff returned to Health Services. Plaintiff's throat was swollen and he "coughed-up fluids…every 20-seconds." Defendant Manzardo told Plaintiff to "live

with it" and gave him seven honey packets with instructions to "use in hot tea." At 10:30 p.m., Plaintiff drank hot tea into which he had poured one of the honey packets. Plaintiff immediately vomited and "had a more swollen throat." Plaintiff then contacted Health Services by telephone and was told by Defendant Manzardo to "live with it."

On December 22, 2009, Defendant Millette told Plaintiff that he: (1) would not attempt to uncover the cause of Plaintiff's respiratory illness; (2) would not issue a special accommodation to prevent Plaintiff being exposed to life-threatening allergens; and (3) would not order tests to determine the allergens in question. Plaintiff informed Defendant Russell of these various denials of medical treatment, but Russell "refused to correct them."

On December 23, 2009, Defendants Cunningham, Mackie, Olson, and/or Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for his grievances and letters of complaint seeking proper care and remedy for his illness."

In February and March 2010, Plaintiff was examined by Defendant Kilaru who informed Plaintiff that his "lungs were scarred and he had coniosis from MDOC's prior lack of care." Defendant Kilaru "refused to do anything" to determine the cause of or treat Plaintiff's symptoms or illness. Plaintiff informed Defendant Kilaru that his "throat swells shut and fills with fluids" when exposed to: (1) aroma; (2) dust; (3) fumes or vapors from cocoa butter lotions and soaps; (4) bath powder; (5) laundry detergent; (6) disinfectant; and (7) certain soaps. Plaintiff asked Defendant Kilaru to perform testing to determine the cause of his various allergic reactions that cause his throat to "swell shut and fill with fluids." Defendant Kilaru responded that "he would not order test(s) to determine allergens, nor determine cause of or treat allergies." Defendant Kilaru also refused Plaintiff's request for a special accommodation to prevent his exposure to these allergens.

Every month from December 2009 through June 2010, Defendants Caruso, Martin, Perea, Russell, MDOC, and PHS were informed of the aforementioned conduct of Defendants Cunningham, Filion, Kilaru, Manzardo, Millette, Piazza, but "refused to end the denial(s) of medical care to Plaintiff."

## **STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

At the outset, the Court notes that the only claims remaining in this matter against Defendant Piazza are Plaintiff's claims that in March 2009, May 2009, and June 2009, Defendant Piazza refused to issue Plaintiff a Special Accommodation for Plaintiff to bunk in a single-person cell to prevent further exposure to allergens. (Dkt. #15 at ¶ 37, 202, 296). Plaintiff asserts that Defendant's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged

deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an

ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant has submitted an affidavit as well as copies of a substantial portion of Plaintiff's medical records. (Dkt. #406, Exhibit B; Dkt. #407). This evidence reveals that Defendant Piazza examined Plaintiff on March 12, 2009. (Dkt. #407 at 10-14). Plaintiff complained that he was experiencing an allergic reaction to his cellmate's use of "lotion and powder." (Dkt. #407 at 10). The results of a physical examination were unremarkable. (Dkt. #407 at 10-14). The doctor determined that Plaintiff's condition "did not require a special accommodation providing him with a single occupancy cell." (Dkt. #406, Exhibit B; Dkt. #407 at 10-14). Plaintiff was nevertheless reminded that he could notify prison officials and request to be moved to a different cell if he so desired. (Dkt. #406, Exhibit B). Plaintiff's medication regimen was also modified. (Dkt. #407 at 12-14).

Plaintiff was next examined by Defendant Piazza on March 20, 2009. (Dkt. #407 at 17-18). Plaintiff reported that he condition was "improving gradually" since his last visit. (Dkt. #407 at 17). The results of a physical examination were unremarkable. (Dkt. #407 at 17-18). Plaintiff was again reminded that he could notify prison officials and request to be moved to a different cell if he so desired. (Dkt. #407 at 17-18).

On May 13, 2009, Defendant Piazza prescribed Proventil and Albuterol to Plaintiff to treat his COPD. (Dkt. #407 at 19-20). On May 19, 2009, Plaintiff reported experiencing "a respiratory complaint." (Dkt. #407 at 22). When Nurse Wendy Ball attempted to examine Plaintiff, however, Plaintiff "refused." (Dkt. #407 at 22). On May 28, 2009, Plaintiff was examined by Dr. Piazza. (Dkt. #407 at 23-27). Plaintiff reported experiencing a sinus infection which was aggravated by "allergic

exposures." (Dkt. #407 at 23). Plaintiff also reported, however, that his condition was relieved by medication. (Dkt. #407 at 23). The results of a physical examination were unremarkable and Plaintiff's medication regimen was again modified. (Dkt. #407 at 23-27). On June 9, 2009, Defendant Piazza prescribed additional medication for Plaintiff to treat his allergy symptoms. (Dkt. #407 at 28). On June 16, 2009, Plaintiff declined to be evaluated by a nurse stating that he was currently taking his prescribed medications and had "no further complaints." (Dkt. #407 at 29).

While Plaintiff has submitted a large number of documents in opposition to the present motion, much of what he has submitted is not admissible evidence and cannot, therefore, be considered by the Court. *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)) ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment"); *see also*, Fed. R. Evid. 901(a). For example, Plaintiff has submitted copies of his medical records on which he has written various notes and commentary. While the underlying medical records constitute admissible evidence, Plaintiff's unsworn hand-written commentary is not. Plaintiff has also included other unsworn statements throughout his various pleadings in response. Such unsworn statements are not admissible.

As for the admissible evidence which Plaintiff has submitted, such demonstrates nothing more than his disagreement with Defendant Piazza's medical judgment and treatment decisions. As the evidence discussed above makes clear, Plaintiff received medical treatment on several occasions from Defendant Piazza. Plaintiff has submitted no evidence that suggests that the treatment he received was unreasonable or that Defendant Piazza's treatment decisions subjected Plaintiff to an excessive health or safety risk. In sum, Plaintiff merely disagrees with the medical treatment he received. While such

a disagreement may implicate state tort law, it does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Piazza's motion for summary judgment be **granted**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Piazza's Motion for Summary Judgment</u>, (dkt. #406), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 4, 2013         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge