UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY NORTHINGTON,

       Plaintiff,                      Hon. Janet T. Neff

v.                                       Case No. 1:10 CV 424

JIM ARMSTRONG, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Prison Health Services, Kilaru, and Millette's Motion for Summary Judgment</u>. (Dkt. #412). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

## BACKGROUND

Plaintiff initiated this action on April 30, 2010, against 42 individuals, the Michigan Department of Corrections (MDOC), Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties." In his sixty-four (64) page certified Second Amended Complaint, Plaintiff asserts numerous claims involving various allegations occurring over a three year period. With respect to Defendants Prison Health Services, Kilaru, and Millette, the following *factual*[1]

---

[1] In describing Plaintiff's various allegations, the Court has disregarded the numerous legal conclusions articulated by Plaintiff in his Second Amended Complaint, as well as the great many generalized factual allegations directed at no particular individual or entity.

allegations are contained in Plaintiff's Second Amended Complaint. To avoid confusion, Plaintiff's allegations are outlined in the same manner as in his Second Amended Complaint.

### A. Allegation II

Plaintiff suffers from airway necrosis, permanent injury to internal organs, scarred lungs, and severe respiratory disease. Plaintiff also experiences "ever-increasing reaction with continued exposure to allergens common to certain locations of all MDOC prisons, and has an unresolved antibiotic resistant infection." As a result, three or more times daily, Plaintiff's "respiratory airways swell shut and fill with fluids so he cannot breath[e] from 15-seconds to 2-minutes each time." It takes "hours" for Plaintiff to recover from this incidents. Plaintiff also experiences difficulty sleeping. In February and March 2010, Defendant Kilaru denied Plaintiff care and subsequently determined that Plaintiff's various physical ailments were caused by "mental illness."

### B. Allegation III

On December 22, 2009, Defendant Millette told Plaintiff that he: (1) would not attempt to uncover the cause of Plaintiff's respiratory illness; (2) would not issue a special accommodation to prevent Plaintiff being exposed to life-threatening allergens; and (3) would not order tests to determine the allergens in question. Plaintiff informed Defendant Russell of these various denials of medical treatment, but Russell "refused to correct them."

In February and March 2010, Plaintiff was examined by Defendant Kilaru who informed Plaintiff that his "lungs were scarred and he had coniosis from MDOC's prior lack of care." Defendant Kilaru "refused to do anything" to determine the cause of or treat Plaintiff's symptoms or illness.

Plaintiff informed Defendant Kilaru that his "throat swells shut and fills with fluids" when exposed to: (1) aroma; (2) dust; (3) fumes or vapors from cocoa butter lotions and soaps; (4) bath powder; (5) laundry detergent; (6) disinfectant; and (7) certain soaps. Plaintiff asked Defendant Kilaru to perform testing to determine the cause of his various allergic reactions that cause his throat to "swell shut and fill with fluids." Defendant Kilaru responded that "he would not order test(s) to determine allergens, nor determine cause of or treat allergies." Defendant Kilaru also refused Plaintiff's request for a special accommodation to prevent his exposure to these allergens.

Every month from December 2009 through June 2010, various Defendants, including Defendant PHS, were informed of the aforementioned conduct of Defendants Kilaru, Millette, and others, but "refused to end the denial(s) of medical care to Plaintiff."

C. Allegation V

In February 2010, Defendants Kilaru and PHS avoided treating Plaintiff by falsely accusing him of suffering from mental illness. In June 2010, Defendant Kilaru refused to issue Plaintiff a special accommodation so that Plaintiff could avoid exposure to "deadly allergens." Plaintiff alleges that all these actions were undertaken in retaliation for having exercised his constitutional rights.

D. Allegation VI

As of December 22, 2009, a "medical hold" prevented Plaintiff from being transferred to another facility. On December 22, 2009, Defendant Millette "entered false information in Plaintiff's medical records" removing the medical hold. The following day, Defendants Cunningham, Henson,

Olson, and Woods transferred Plaintiff from the Kinross Correctional Facility to the Mound Correctional Facility "in retaliation for asserting rights to proper medical care through grievances and letters."

## **STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      Defendant Prison Health Services**

Plaintiff alleges that Prison Health Services violated his constitutional rights by denying him medical treatment and by failing to take action in response to denial of medical treatment by others.

PHS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against PHS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a PHS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that PHS had notice or constructive notice of such; (3) that PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and

(4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff has presented no evidence that, even if believed, would establish that he suffered a violation of his federal rights "because of" a PHS policy, practice, or custom. Accordingly, the undersigned recommends that Defendant PHS's motion for summary judgment be **granted**.

## II. Defendant Millette

Plaintiff asserts that on December 22, 2009, Defendant Millette: (1) denied him medical treatment, (2) refused to issue a Special Accommodation, and (3) entered false information into his medical records as part of a retaliatory transfer. The alleged refusal to provide medical treatment and a Special Accommodation implicate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The claim that Defendant Millette falsified Plaintiff's medical records so as to facilitate a retaliatory transfer implicates Plaintiff's First Amendment rights.

### A. Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison*

*County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of

medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Millette has submitted an affidavit, copies of a portion of Plaintiff's medical records, and a transcript of Plaintiff's deposition testimony. (Dkt. #412, Exhibits B-D; Dkt. #415). This evidence reveals that Defendant Millette, a Physician's Assistant, examined Plaintiff on December 22, 2009. Plaintiff reported that he "suffered shortness of breath" and "coughed all the time." Defendant Millette noted, however, that Plaintiff "did not cough at all during the appointment." Plaintiff requested that he be provided with a single-person cell as well as a "special accommodation with regard to the laundry detergent used to clean his items." Defendant Millette denied Plaintiff's request on the ground that such were not medically warranted. Defendant Millette instead recommended to Plaintiff that he continue taking his prescribed medication.

While Plaintiff has submitted a substantial amount of information in response to the present motion, such fails to advance his cause. The material submitted by Plaintiff does nothing more than demonstrate that Plaintiff simply disagrees with Defendant Millette's medical judgment and treatment decisions. While Plaintiff's claims that Defendant Millette misdiagnosed and mistreated his various ailments may sound in state tort law, such fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Millette's motion for summary judgment be **granted** as to Plaintiff's Eighth Amendment claims.

B.   First Amendment

Plaintiff next alleges that Defendant Millette entered false information in his medical records, thereby removing a "medical hold" which prevented his transfer to another facility. Following this conduct, Plaintiff alleges that he was transferred to another facility in retaliation for exercising his constitutional rights. The Court has interpreted this claim as implicating Plaintiff's First Amendment right to not be subject to unlawful retaliation.

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1.   Adverse Action Which Would Deter a Person of Ordinary Firmness

As is well recognized, "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Generally, a transfer to another prison "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 2011 WL 1586075 at *3 (6th Cir., Apr. 28, 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). Accordingly, a retaliation claim based on an allegedly retaliatory transfer "ordinarily should be characterized as *de minimis* and dismissed at the summary judgment stage." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 703).

There is an exception to this general rule for circumstances in which "foreseeable, negative consequences inextricably follow from the transfer." *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02). The type of negative consequences sufficient to satisfy this exception include the loss of a high-paying prison job, a reduced ability to meet with a lawyer, or other interference with the ability to engage in protected conduct. *Jones*, 2011 WL 1586075 at *3 (quoting *Siggers-El*, 412 F.3d at 701-02); *Hix*, 196 Fed. Appx. at 358. Thus, to satisfy this exception, Plaintiff must establish that (1) he suffered sufficiently negative consequences, (2) that such inextricably resulted from his transfer, and (3) Defendant knew or should have known that such negative consequences would result from the transfer in question. *Jones*, 2011 WL 1586075 at *3.

While Plaintiff may have been inconvenienced by the transfer in question, he has failed to demonstrate that he experienced sufficiently negative consequences as a result of the transfer. Plaintiff has failed to establish that any negative consequences he may have experienced "inextricably follow[ed] from the transfer." Finally, even assuming Plaintiff could establish such, Plaintiff has failed to establish that Defendant Millette knew or should have known that such negative consequences would result from his transfer. Thus, the transfer in question was simply a *de minimis* incident of ordinary prison life and could not have deterred a person of ordinary firmness from engaging in protected activity.

2. Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

In his affidavit, Defendant Millette asserts that he "did not take any actions to have [Plaintiff] transferred." Plaintiff has submitted no evidence calling this assertion into dispute, but instead merely reiterates unsubstantiated legal conclusions.

In sum, Plaintiff has failed to establish that he suffered any adverse action as a result of the challenged transfer or that the decision to transfer him was in any way motivated by any protected conduct in which he might have engaged. Accordingly, the undersigned recommends that Defendant Millette is entitled to summary judgment on this particular claim.

### III. Defendant Kilaru

Plaintiff asserts that in February and March 2012, Defendant Kilaru denied him medical treatment and denied his request for a special accommodation. Plaintiff further alleges that Defendant Kilaru, in June 2010, again denied his request for a special accommodation. Plaintiff asserts that Defendant Kilaru's conduct was motivated by a desire to unlawfully retaliate against Plaintiff.

A. Eighth Amendment

In support of his motion for summary judgment, Defendant Kilaru has submitted an affidavit, copies of a portion of Plaintiff's medical records, and a transcript of Plaintiff's deposition testimony. (Dkt. #412, Exhibits B-D; Dkt. #415). This evidence reveals that Plaintiff was examined by Defendant Kilaru, a licensed physician, on February 10, 2010, March 31, 2010, and on June 25, 2010.

On February 10, 2010, Dr. Kilaru conducted a "complete physical examination" of Plaintiff, the results of which revealed that Plaintiff was experiencing nasal congestion and allergies. The doctor prescribed various medications to Plaintiff to treat these issues. Defendant Kilaru does not recall Plaintiff requesting any special accommodation, but asserts that any such request would have been denied as unnecessary. With respect to Plaintiff's claims that Dr. Kilaru diagnosed him with a mental illness as a means to avoid providing him with medical treatment, the doctor asserts that while he treated Plaintiff's medical complaints he nevertheless had "concerns as to [Plaintiff's] mental health due to statements he made to me."

Defendant Kilaru again examined Plaintiff on March 31, 2010. Plaintiff complained of "a growth on his arm" which Dr. Kilaru determined was "not something to be concerned about and did not require any course of treatment." With respect to Plaintiff's allergies and respiratory issues, the doctor reviewed Plaintiff's medications and "recommended that [Plaintiff] continue his current course of treatment and medication." As Dr. Kilaru asserts, "[n]o change in [Plaintiff's] treatment plan was medically indicated as he was not suffering excessive symptoms and his allergies were largely under control." Dr. Kilaru also observed that Plaintiff appeared to be "suffering anxiety and possible Obsessive Compulsive Disorder." Accordingly, the doctor "referred [Plaintiff] to the Psychologist for a mental health evaluation to address possible psychological issues."

Plaintiff was again examined by Dr. Kilaru on June 25, 2010. Given the results of this examination, the doctor determined that Plaintiff should "continue his current course of treatment and medication." Defendant Kilaru does not recall Plaintiff requesting any special accommodation, but asserts that any such request would have been denied as unnecessary.

Again, while Plaintiff has submitted a substantial amount of information in response to the present motion, such fails to demonstrate the existence of a genuine issue of material fact necessitating a trial. Rather, the material submitted by Plaintiff does nothing more than demonstrate that Plaintiff simply disagrees with Defendant Kilaru's medical judgment and treatment decisions. While Plaintiff's claims that Defendant Kilaru misdiagnosed and mistreated his various ailments may state a claim for malpractice, such fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Kilaru's motion for summary judgment be **granted** as to Plaintiff's Eighth Amendment claims.

B. First Amendment

Plaintiff claims that Defendant Kilaru denied him appropriate medical treatment in retaliation for filing grievances and because the cost of his medical care had become excessive. Even if the Court assumes that Plaintiff was engaged in protected conduct and suffered some adverse action, he has failed to present any evidence that his protected conduct was a "motivating factor" behind the allegedly retaliatory action taken. In his affidavit, Defendant Kilaru asserts that he "never took any actions to retaliate against" Plaintiff. Plaintiff has submitted no evidence calling this assertion into dispute, but instead merely reiterates unsubstantiated legal conclusions. Accordingly, the undersigned

recommends that Defendant Kilaru is entitled to summary judgment on Plaintiff's First Amendment claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Prison Health Services, Kilaru, and Millette's Motion for Summary Judgment</u>, (dkt. #412), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 4, 2013  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge