UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY M. NORTHINGTON #193035,

    Plaintiff,                                              Hon. Janet T. Neff

v.                                                    Case No. 1:10-cv-00424

JIM ARMSTRONG, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court with respect to Plaintiff's continued violations of this Court's orders. Pursuant to 28 U.S.C. 636(b)(1)(B), the undersigned hereby recommends that Plaintiff's action be **dismissed with prejudice**.

## BACKGROUND

Plaintiff initiated this action on April 30, 2010, naming more than forty-two individuals and entities as defendants. Since the inception of this matter, Plaintiff has persisted in a line of conduct that is detrimental to the administration of justice and the operations of this Court. The Court has on several occasions warned Plaintiff to modify his behavior or face sanctions, including dismissal of this matter. The Court's warnings have gone unheeded. Accordingly, for the reasons discussed herein, the undersigned recommends that this matter be dismissed with prejudice.

1

The Court was first alerted to Plaintiff's inappropriate conduct on November 23, 2010, by counsel for Defendant Correctional Medical Services, Inc. (Dkt. #68). As counsel detailed, Plaintiff's correspondence with counsel included threatening and inappropriate content. For example, Plaintiff forwarded newspaper clippings with notes attached that conveyed threatening messages suggesting that by defending this case, counsel would suffer some form of biblically inspired retribution. (Dkt. # 68, Ex. A). Plaintiff asserted his belief that this Court lacks jurisdiction or authority in this matter because Plaintiff can only be judged by God and, furthermore, that the present action "is about God using me [Plaintiff] to bring judgment on evil."[1] (Dkt. # 68, Ex. C). Plaintiff refers to defense counsel as a "Mad Dog" and included an exhibit containing a drawing of a clearly exasperated Daffy Duck with a bubble caption reading, "[e]veryday of my life I'm forced to add another name to the list of people who can just kiss my ass!" (Dkt. #68, Ex. B-C).

On January 5, 2011, the Court issued to Plaintiff an Order to Show Cause "why this case should not be dismissed for threatening and non-case related communications." (Dkt. #86). On January 14, 2011, the Court held a hearing on this matter at which Plaintiff participated by telephone. (Dkt. #96). On January 21, 2011, the Court issued an Order which, in part, cautioned Plaintiff "in no uncertain terms that should he send any attorney or party threatening and/or disrespectful communication in the future, the undersigned will recommend that his case be dismissed with prejudice." (Dkt. #109).

On March 23, 2011, in response to Plaintiff's "inappropriate conduct" and meritless filings, the Court again warned Plaintiff that "the Court will impose appropriate

---

[1] Plaintiff's religious beliefs are clearly protected by the First Amendment. However, in this particular context, Plaintiff's religious references advance no legitimate litigation purpose.

2

sanctions on Plaintiff should he continue to engage in inappropriate conduct. Such sanctions may include the dismissal of Plaintiff's claims." (Dkt. #184).

Plaintiff, however, was not deterred and continued to file pleadings that served only to waste this Court's limited resources, prejudice Defendants' ability to defend this matter, and further delay resolution of this matter.

As but a few examples, less than a week after again being warned to desist engaging in inappropriate conduct, Plaintiff filed a pleading in which he questioned defense counsel's honesty and integrity and, again, cited to religious authority as a basis for this Court to provide relief. (Dkt. #187). Soon thereafter, Plaintiff filed a pleading in which he accused defense counsel of acting dishonestly and committing "fraud on the court." (Dkt. #203). Plaintiff, again citing to biblical authority, accused the Court of being "unduly biased" against Plaintiff. (Dkt. #203). On April 22, 2011, Plaintiff submitted a letter to Judge Neff and the undersigned in which he elaborated on the origins of the Second Amendment and his right to engage in armed self-defense to protect himself from tyrannical government officials. (Dkt. #230).

On April 11, 2012, Plaintiff appealed to the Honorable Janet T. Neff two Orders of this Court. (Dkt. #402). Plaintiff again cited to religious authority in support of his request for relief. Plaintiff further accused the undersigned of "falsely parroting statements of defense counsel." (Dkt. #402). That same day, Plaintiff filed a pleading in which he stated that defense counsel "commits genocide for profit by fraudulently concealing wrongful acts of his clients." (Dkt. #404). Plaintiff further asserted that defense counsel was acting pursuant to "The Nuremburg Code." (Dkt. #404).

Two days later, Plaintiff filed a pleading in which he included a letter he previously mailed to defense counsel. (Dkt. #410). In this letter, Plaintiff referred to defendants (and others) as "medical NAZIs." (Dkt. #410). Plaintiff also demanded that he given the following: (1) $1.5 million dollars; (2) immediate release from prison; (3) no-cost health care for the remainder of his life; and (4) a driver's license and "a hybrid truck to drive home to West Virginia." (Dkt. #410). Later that same month, Plaintiff filed two frivolous motions requesting that Defendants and defense counsel be held in contempt. (Dkt. #419, 420).

Not surprisingly, on June 4, 2012, Defendants moved the Court to "Order Plaintiff to stop filing frivolous pleadings." (Dkt. #456). As Defendants accurately detailed in their motion, Plaintiff, despite multiple warnings from this Court, continued "filing numerous pleadings which are duplicative, unnecessary, and in some cases, meant to harass defendants and defense counsel." The Court subsequently granted Defendants' motion and placed Plaintiff on "restricted filer" status. (Dkt. #545). Specifically, the Court ordered that "Plaintiff shall not make further filings relating to this case. . .unless pursuant to a court order or by first obtaining permission from the Court." The Court further ordered that "if Plaintiff continues to unduly burden the Court's limited resources by filing motions and pleadings with questionable or no merit, the Court will recommend that this matter be dismissed for abuse of the judicial process and failure to comply with the Court's orders." Plaintiff was further warned that "[t]his is the Court's final attempt to persuade Plaintiff to modify his behavior." Despite such clear – and repeated – warnings, Plaintiff continues to violate the Court's orders.

Between March 11, 2013, and March 21, 2013, Plaintiff filed several motions that were neither pursuant to a court order nor permitted by the Court. While the Court could perhaps overlook the filing of appropriate pleadings without first obtaining pre-approval, the content of Plaintiff's most recent pleadings reveals that dismissal of this matter is appropriate.

On March 21, 2013, Plaintiff filed a pleading in which asserts that "defense counsel is a devout communist who seeks overthrow of the U.S.A." (Dkt. #553). Plaintiff further asserts that "defendants and counsel" are attempting to murder Plaintiff. Throughout this pleading, Plaintiff asserts that defendants and defense counsel have engaged in fraud and dishonesty. In support of such assertions, Plaintiff again cites to religious authority. Finally, Plaintiff asserts that defendants are engaging in "NAZI-DEATH-CAMP-mentality to falsely claim persons were mentally ill as an excuse to murder them."

Four days later, Plaintiff filed a pleading in which he states that this Court "effectively said Defendants Kilaru, Millette, Piazza and others can lie, steal, cheat, commit material fraud on the Court and get away with it." (Dkt. #554). Plaintiff further asserts that "this Court inferred murder of Plaintiff by Defendants is legal when allowing such fraud by Defendants and defense counsel." (Dkt. #554). Plaintiff also reiterated his belief that defendants are engaging in "NAZI-DEATH-CAMP-mentality to falsely claim persons were mentally ill as an excuse to murder them." (Dkt. #554).

The content of these pleadings is in clear violation of this Court's previous warnings and Orders. Plaintiff's continued obstreperous conduct, compels the undersigned to recommend that this matter be dismissed with prejudice.

## ANALYSIS

The Rules of Civil Procedure allow for involuntary dismissal of an action "if the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Moreover, while not expressly stated therein, "Rule 41(b) recognizes the power of the district court to enter a sua sponte order of dismissal." *Steward v. City of Jackson, Tenn.*, 8 Fed. Appx. 294, 296 (6th Cir., Mar. 13, 2001) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962)). This authority is available to district courts as a tool to ensure effective "management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

Before dismissing a matter pursuant to Rule 41(b), the Court must first consider the following factors: (1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the offending party's dilatory conduct; (3) whether the offending party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See Stough v. Maryville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998). While no one factor is dispositive, a case is properly dismissed when there is a clear record of delay or contumacious conduct. *Knoll*, 176 F.3d at 363.

### I. Failure to Cooperate due to Willfulness, Bad Faith, or Fault

While it is often difficult to discern an individual's intent or motivation from written submissions alone, the Court can confidently declare that Plaintiff has acted willfully, in bad faith, and without absence of fault. Such is clear by the content and tone of Plaintiff's submissions in this matter as well as his repeated refusal to comply with the Court's Orders that

he conduct himself in a reasonable manner. *See Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (willfulness, bad faith, or fault is evidenced by conduct that "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings"). Thus, the Court finds that this factor weighs quite heavily in favor of dismissal.

II. Prejudice to Opposing Party

That Defendants have been prejudiced in this matter is apparent by the overwhelming volume of frivolous pleadings to which they have been forced to respond. Additionally, the constant barrage of ad hominem attacks and accusations by Plaintiff has undoubtedly prejudiced Defendants in more subtle, but no less significant, ways. This factor, therefore, also weighs heavily in favor of dismissal.

III. Plaintiff was Afforded Ample Warning

As detailed herein, Plaintiff has been warned on several occasions, over a lengthy period of time, that dismissal of this matter was likely in the event he did not modify his behavior and comply with this Court's Orders. This factor, therefore, weighs in favor of dismissal.

IV. Less Drastic Sanctions Were Considered

The Court has attempted on numerous occasions to dissuade Plaintiff from continuing his abusive behavior. Before recommending dismissal of this matter, the Court placed Plaintiff on "restricted filer" status, hoping that such might finally persuade Plaintiff to modify his behavior.

As noted above, however, the Court's efforts in this regard have fallen on deaf ears. Accordingly, this factor likewise weighs in favor of dismissal.

V. Prejudicial Effect on the Court

In addition to the four factors analyzed immediately above, the Court must also consider the impact that Plaintiff's unreasonable conduct has had on this Court's very limited resources. *See, e.g., In re McDonald*, 489 U.S. 180, 184 (1989) ("[a] part of the Court's responsibility is to see that [its] resources are allocated in a way that promotes the interests of justice"). Plaintiff's conduct significantly impacts this Court's ability to administer justice in this case as well as the hundreds of other cases which this Court presently manages. The rights of hundreds of litigants and attorneys cannot be sacrificed at the alter of Plaintiff's unreasonable, disrespectful, and offensive conduct.

## CONCLUSION

In light of the behavior and circumstances described herein, the undersigned recommends that this matter be **dismissed with prejudice** under Federal Rule of Civil Procedure 41(b) for failure to comply with this Court's orders.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk fo the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: April 9, 2013

    /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge